(No. 2075— )

ELIZABETH A. MORROW, EXECUTRIX OF THE ESTATE OF JOSEPH A. MORROW, Deceased, Claimant *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 21, 1934.*

SCHAEFER & DOLAN, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Elizabeth A. Morrow as executrix of the estate of Joseph A. Morrow, deceased, has filed herein her complaint against the State for the recovery of compensation for the death of her husband, Joseph A. Morrow under the terms and provisions of the Workmen's Compensation Act.

Said Joseph A. Morrow, for about forty-five years immediately preceding his death was an employee of the University of Illinois, and for over fifteen years prior to his death was Superintendent of Buildings at the University, pursuant to appointment by the Board of Trustees upon the recommendation of the President and Supervising Architect. Mr. Morrow maintained an office on the campus at 110 Power Plant from which office he exercised direct supervision over the physical plant of the University, including operations of the buildings and control of the janitors and employees of the power plant. It was part of his duties to see that the buildings should be properly taken care of, maintained and operated.

In the performance of his duties he was subject only to the Board of Trustees, the President of the University, and the Supervising Architect thereof.

Among other duties, Mr. Morrow had charge of the purchase of coal for the University heating and power plant, which consumed approximately forty-five thousand (45,000) tons per annum. With the approval of the Board of Trustees and the Supervising Architect, Mr. Morrow had been accustomed for a number of years to purchase coal from the mines in southern Illinois. The method employed by the Trustees involved the making of trips to the coal mines by Mr. Morrow for the purpose of ascertaining if coal was available and the approximate tonnage thereof. After obtaining such information, Morrow would return to the University and the purchase would then be completed by telephone. This had proven to be the most economical way to purchase coal for the use of the University.

On August 22, 1932, while enroute to southern Illinois to purchase coal for the University he sustained accidental injuries as the result of a collision between the automobile in which he was riding and another automobile, which injuries resulted in his death within an hour after the accident.

It was stipulated between the claimant and the respondent, among other things, as follows:

"The care of the physical plant of said University which was under the personal supervision and control of the said Joseph A. Morrow as such Superintendent of Buildings, required the services of about 250 employees, all under said Morrow. There are about 125 buildings in said physical plant, of which about 75 are located on a campus area of about 500 acres; the other (principally agricultural buildings) being located some distance from the campus proper.

"That the power and heating plant, the electrical plant, the water plant, garages, storage buildings, telephone system, auto and truck equipment, and police force and fire department, were all under the personal and direct supervision of said Morrow as such Superintendent of Buildings.

"One of the duties of said Joseph A. Morrow in the operation of the heating plant of said University was the purchase of coal for the plant. The said Morrow was engaged in this specific duty, going to the coal mines in southern Illinois to buy coal for said heating plant at the time of the accident in which he was killed, about 11:00 o'clock A. M., Monday, August 22, 1932.

"Said accident was the result of an automobile collision which occurred at the intersection of Illinois State Routes 25 and 121 at Tuscola, in Douglas County, Illinois, and the said Joseph A. Morrow died within an hour after the accident, without regaining consciousness. The said Morrow was not guilty of any contributory negligence, but was in the exercise of due care and caution for his own safety at the time of the accident.

"At said time and place, said Morrow was riding in a Chevrolet sedan owned by the University of Illinois, and driven by S. E. Griffith, another employee of said University, for the special purpose of taking said Morrow to southern Illinois to purchase coal for the University, as above stated. Said Morrow was riding in the front seat of said auto with said Griffith, and they were not talking as they approached the said intersection.

"The plaintiff paid out the items of $10.00 to Dr. John O. Cletcher for medical services, and $10.20 to Enos H. Renner for ambulance services, as set forth in the plaintiff's Bill of Particulars, marked 'Claimant's Exhibit B,' and attached to her Declaration of Claim filed in this cause."

Although in the service of the University, Mr. Morrow was paid by the Auditor of Public Accounts of the State and under repeated decisions of the Supreme Court of this State, was an employee of the State. *People* vs. *Board of Trustees*, 283 Ill. 494-501; *Thomas* vs. *University of Illinois*, 71 Ill. 310.

The State therefore was an employer and Morrow was an employee within the meaning of those words as used in

the Compensation Act. Under the evidence there is no question but what Morrow was in the performance of his duties at the time of the accident in question.

The Attorney General contends that the accident in question did not arise out of and in the course of the employment of Mr. Morrow. The evidence shows conclusively that his duties necessarily took him away from the University for the purpose of purchasing coal, and that he was in the performance of his duties at the time of the accident. Being engaged in the performance of his duties at the time of the accident, there can be no question but what the accident arose out of and in the course of his employment. *Mueller Construction Co.* vs. *Ind. Bd.*, 283 Ill. 148; *Irwin Niesler & Com.*, 346 Ill. 89; *Swift and Co.* vs. *Ind. Com.*, 350 Ill. 413; *Kennedy Van Saun Mfg. Co.* vs. *Ind. Com.*, decided by the Supreme Court at the February term, 1934, thereof, but not yet reported.

The real question in the case is as to whether under the circumstances, the State was engaged in a business or enterprise which is extra-hazardous within the meaning of Section three (3) of the Act.

In a general opinion heretofore rendered to the University of Illinois, this court held to the view that the University is engaged in an "enterprise" within the meaning of the Compensation Act, and also held to the view that although the University was chartered primarily to furnish instruction to students in various branches of learning, yet it consists of a number of different departments or schools which are practically complete in themselves; and therefore it is in the same position as an individual or corporation which is engaged in several different businesses or enterprises, some of which may be extra-hazardous and some not; that each department or school must therefore be considered a separate business or enterprise, and the liability of the University in each case depends upon whether that particular school or department comes within any of the provisions of Section three (3) of the Act, or is a business or enterprise which is extra-hazardous in fact.

Under the evidence and the stipulations in the record, it satisfactorily appears that the heating and power plant is an independent department of the University; that the heat-

ing plant contains eight (8) large stokers, eight (8) furnaces, and eight (8) boilers, having a capacity of about seven thousand (7,000) horsepower; that there are about Fifty-five Hundred (5,500) feet of large covered tunnels for heating pipes; that there are about Twenty-eight Hundred (2,800) feet of open lines in basements of buildings and about Sixteen Thousand Five Hundred (16,500) feet of conduit tunnels for insulated steam lines and electric lines connecting the more distant buildings; that the power plant is a part of the heating plant, and connected with it; that the power room contains Three (3) generators aggregating about Seventeen Thousand Five Hundred (17,500) kilowatt power with dynamos and other machinery in proportion, which would be sufficient to furnish power and light for a city of Five Thousand (5,000) people; that the machinery is such that the laws of Illinois and the ordinances of the cities of Champaign and Urbana require it to be surrounded by guards and rails to protect the employees and the public from injury; that such guards and rails have for years been maintained around such machinery.

It appears, therefore, that in the operation and maintenance of its heating and power plant the University comes within the provisions of Paragraph eight (8) of Section three (3) of the Act and possibly several other paragraphs of said Section three (3), and, further, that the business or enterprise of maintaining and operating the heating and power plant is extra-hazardous in fact, and that the claimant is therefore entitled to an award under the provisions of the Act.

The deceased left him surviving Elizabeth A. Morrow, his widow, and Charles E. Morrow and Thomas W. Morrow, his adult sons, as his only heirs at law. Elizabeth A. Morrow was dependent on said Joseph A. Morrow for her support at the time of his death. Neither Charles E. Morrow nor Thomas W. Morrow were so dependent. The wages of said Joseph A. Morrow were $416.66 per month, and the claimant is therefore entitled to an award of Four Thousand Dollars ($4,000.00), and in addition thereto the sum of Twenty Dollars and Twenty Cents ($20.20) for medical services, etc., rendered at the time of the accident, making a total of Four Thousand Twenty Dollars and Twenty Cents ($4,020.20). The compensation, however, is required to be

paid to the widow individually and not as executrix. *Keller* vs. *Ind. Com.*, 291 Ill. 314; *Peabody Coal Co.* vs. *Ind. Com.*, 299 Ill. 142.

Award is therefore entered in favor of the claimant for the sum of Four Thousand Twenty Dollars and Twenty Cents ($4,020.20), payable as hereinbefore set forth.