OPINION
{¶ 1} Appellant, Juan R. Saldana, appeals the judgment entered by the Geauga County Court of Common Pleas. The trial court entered summary judgment in favor of appellees, Erickson Landscaping Construction ("Erickson") and James Conrad, Administrator, Bureau of Workers' Compensation.
 {¶ 2} Saldana worked for Erickson. The employees of Erickson would report to work at a maintenance garage, where a time clock was kept. After clocking in, the employees would leave in company trucks to the various landscaping jobs. After completing their work, the employees would return to the garage, clock out, and leave in their personal vehicles.
 {¶ 3} Some of the employees at Erickson did not have automobiles or driver's licenses and would ride to and from work with other employees. Wayne Erickson, Erickson's owner, approved and encouraged these transportation arrangements.
 {¶ 4} On the day in question, Saldana claims he was planning on giving Ramon Masias, another employee, a ride home. Although this was not the usual arrangement, Saldana stated they were planning on going shopping for car stereo equipment after work.
 {¶ 5} On September 5, 2002, Saldana returned to the garage about 5:30 p.m. and clocked out. Masias was not due to return to the garage until after 6:00 p.m. While waiting for Masias, Saldana decided to work on his personal car. He backed the vehicle up to the bay door of the garage and began working on the car. When Saldana was working on his car, Tim Simpson, a foreman at Erickson, threw an "M-80" or "M-100" firecracker towards Saldana's car to scare him. Simpson had also clocked out at the time of this incident. Saldana picked up the firecracker in an attempt to throw it. It exploded in his hand. Saldana was injured as a result of the incident.
 {¶ 6} Saldana submitted a claim for workers' compensation benefits. This claim was denied. After exhausting his administrative remedies, Saldana appealed to the common pleas court, pursuant to R.C. 4123.512. At the trial court level, all parties submitted motions for summary judgment. The trial court denied Saldana's motion for summary judgment and entered summary judgment in favor of appellees. The trial court found that Saldana was not acting in the course and scope of his employment at the time of the firecracker incident and, thus, was not entitled to participate in the workers' compensation fund.
 {¶ 7} Saldana raises one issue for review, construed by this court as an assignment of error:
 {¶ 8} "Whether an employee who is waiting on the employer's premises for another co-employee to return from working, so he can provide that co-employee with a ride home, is in the course and scope of his employment, and therefore has a right to participate in the workers' compensation fund when injured while working."
 {¶ 9} The trial court's judgment entry overrules Saldana's motion for summary judgment and enters summary judgment in favor of appellees. We ultimately conclude that there remain genuine issues of material fact and that summary judgment is not appropriate in favor of any of the parties. However, since judgment was entered in favor of appellees, we will analyze this matter as it relates to appellees' motions for summary judgment.
 {¶ 10} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[1] In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the non-moving party.[2]
The standard of review for the granting of a motion for summary judgment is de novo.[3]
 {¶ 11} In Dresher v. Burt, the Supreme Court of Ohio set forth a burden-shifting exercise to occur on a summary judgment determination. Initially, the moving party must point to evidentiary materials to show that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.[4] If the moving party meets this burden, a reciprocal burden is placed on the non-moving party to show that there is a genuine issue of material fact for trial.[5]
 {¶ 12} "In order to qualify for workers' compensation, an employee must have suffered an injury `in the course of, and arising out of,' his employment."[6] The Supreme Court of Ohio has set forth the following test to determine whether there was a causal connection between the injury and the employment to satisfy the classic definition of "arising out of" the employment: "`(1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident.'"[7]
 {¶ 13} Initially, we note that Saldana had clocked out one half hour before the firecracker incident and, thus, was not being paid at the time of his injury. He was working on his personal vehicle. While Saldana was not "on duty," we turn to theFisher v. Mayfield test to determine whether Saldana's injury "arose out of" his employment. The undisputed facts reveal that the first prong of the test was met, as the injury occurred on Erickson's premises. The remaining inquiries are whether Saldana's activities conveyed a benefit to Erickson and the degree of control Erickson exercised over the situation. Specifically, the question is whether Saldana's continued presence on the employer's premises waiting to give a co-worker a ride qualifies him for worker's compensation benefits.
 {¶ 14} Saldana claims he was conveying a benefit upon Erickson by waiting to give a co-employee a ride home. Saldana cites Curran v. Mayfield in support of his argument.[8]
In Curran, an individual was injured when she slipped and fell, when returning to the employer's building after she had clocked out, to see what was taking her son so long. She was intending on giving her son, another employee, a ride home.[9] The Fifth Appellate District affirmed summary judgment in favor of the injured worker, holding that the employer had control over the premises and the employer benefited from the ride-sharing arrangement.[10]
 {¶ 15} In his brief in opposition to the appellees' motions for summary judgment and in support of his own motion for summary judgment, Saldana specifically references the deposition testimony of several employees of Erickson, as well as Wayne Erickson. In general, Saldana argued that this testimony demonstrates that a ride-sharing system was in place at Erickson, which sufficiently related to his employment to qualify his injury for workers' compensation benefits. For the reasons that follow, this deposition testimony satisfied Saldana's reciprocal burden, under Dresher v. Burt, by showing genuine issues of material fact existed for trial. The deposition testimony set forth the following facts.
 {¶ 16} An Erickson employee, Liburio Reynoso, stated that he would wait for a ride from other employees after his shift. He indicated that he would have to wait an hour or more about twice a week. He stated that Wayne Erickson knew he would wait for a ride after his shift concluded. Finally, he was never told he was prohibited from remaining on the premises after his shift had concluded to wait for a ride.
 {¶ 17} Another employee, Gabriel Valdez, stated he provided rides to other employees. He testified that Wayne Erickson would work with the employees that drove to ensure that everyone had a ride home, and that he permitted employees to wait for other employees to return to the shop in order to give or receive a ride home. In addition, he stated that Wayne Erickson encouraged his employees to give coemployees rides.
 {¶ 18} In his deposition, Wayne Erickson stated, "I'll be on a job with one of those guys, and I would drive them home or make arrangements for them to drive them home through me or through one of my foremen." In addition, he stated that if an employee was left without a ride, he would provide another employee to give that employee a ride home. He also admitted that he had encouraged certain employees to give fellow employees rides. Finally, he acknowledged that certain employees would wait for rides after their shift. If he was back at the shop and noticed an employee waiting a long time, he would have the employee do busy work, such as sweeping the floor.
 {¶ 19} As the non-moving party, Saldana was entitled to have all facts construed most strongly in his favor.[11] Thus, for the purpose of a summary judgment determination, the collective deposition testimony indicates that: (1) Saldana was waiting to give Masias a ride; (2) Erickson employed several employees that did not have driver's licenses; (3) Erickson took additional steps to ensure that his employees had rides to and from work; and (4) Erickson encouraged ride-sharing agreements and approved of employees waiting after their shift ended to give or receive a ride home. Saldana presented sufficient evidence that Erickson benefited from the ride-sharing agreements to survive a motion for summary judgment. In addition, the evidence suggests that Erickson exercised control over the ride-sharing agreements, including allowing employees to wait for rides. Reasonable minds could differ on these factors. There remain genuine issues of material fact as to whether Saldana's activity arose out of his employment in order for his injury to qualify for workers' compensation benefits.
 {¶ 20} Appellees note that Saldana was working on his personal car immediately preceding the injury. The Ninth Appellate District has held that repairing a personal vehicle, even while on the clock, conveys no benefit to the employer.[12] The court held the injury sustained during the attempted repair does not qualify for workers' compensation benefits.[13] However, it is important to note that the injury in Tamarkin Co. v. Wheeler was a direct result of repairing the car. The employee was cut on the mirror of his automobile.[14] Saldana was not injured as a result of working on his car. He was injured as a result of a prank. Saldana could have sustained the same injury had he been sitting outside the shop.
 {¶ 21} Saldana stated that his primary reason for remaining on Erickson's premises was to wait for Masias and that he was working on his car to "blow off time." Again, for summary judgment purposes, Saldana is entitled to have the evidence construed most strongly in his favor. Therefore, for this analysis, what Saldana was doing while waiting for Masias to return to the shop is of little significance.
 {¶ 22} The trial court concluded that Saldana's act of attempting to toss the firecracker was not related to his employment and did not convey a benefit to Erickson. The evidence in the record suggests that the firecracker was initially thrown as a prank. This activity would be classified as "horseplay." There are two general requirements that need to be met for an injury resulting from "horseplay" to be compensable. First, the claimant must not have instigated the horseplay.[15] In addition, the injury must have occurred while the injured worker was on duty.[16]
 {¶ 23} In this matter, there is no evidence that Saldana instigated the "horseplay." Rather, Simpson admitted lighting the firecracker and throwing it in Saldana's direction. While Simpson stated that Saldana walked to the firecracker, there is no evidence showing the initial distance between the firecracker and Saldana. Thus, construing the evidence most strongly in favor of Saldana, there remains a genuine issue of material fact regarding his participation, if any, in the horseplay. Accordingly, summary judgment against Saldana is not appropriate on this issue. In addition, due to our previous analysis, genuine issues of material fact remain as to whether Saldana's waiting on the premises to give a co-employee a ride home "arose out of his employment." Accordingly, if Saldana was participating in an activity "arising out of his employment," then an injury sustained as a result of horseplay that was not instigated by him could be compensable under the Workers' Compensation Fund.
 {¶ 24} There remain several genuine issues of material fact to be resolved by a trier of fact. As such, the trial court erred by entering summary judgment in favor of appellees. Likewise, Saldana is not entitled to judgment as a matter of law, so the trial court did not err by overruling his motion for summary judgment.
 {¶ 25} Saldana's assignment of error has merit to the extent indicated.
 {¶ 26} The judgment of the trial court overruling Saldana's motion for summary judgment is affirmed. The judgment of the trial court granting appellees' motions for summary judgment is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.
Ford, P.J., concurs, Christley, J., dissents with Dissenting Opinion.
[1] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
[2] Civ.R. 56(C).
[3] Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105.
[4] Dresher v. Burt, 75 Ohio St.3d at 293.
[5] Id.
[6] Abrams v. Eltech Sys., Inc. (Sept. 8, 1995), 11th Dist. No. 94-L-165, 1995 Ohio App. LEXIS 3894, at *4, citing R.C.4123.01(C).
[7] Fisher v. Mayfield (1990), 49 Ohio St.3d 275, 277, quoting Lord v. Daugherty (1981), 66 Ohio St.2d 441, syllabus.
[8] Curran v. Mayfield (Oct. 11, 1990), 5th Dist. No. CA-391, 1990 WL 163785.
[9] Id.
[10] Id. at *2.
[11] Civ.R. 56(C).
[12] Tamarkin Co. v. Wheeler (1992), 81 Ohio App.3d 232,235.
[13] Id.
[14] Id. at 233.
[15] Kohn v. Trimble (Nov. 17, 1995), 11th Dist. No. 95-T-5210, 1995 Ohio App. LEXIS 5105, at *8, citing Caygill v.Jablonski (1992), 78 Ohio App.3d 807.
[16] Caygill v. Jablonski, 78 Ohio App.3d at 816, quotingIndus. Comm. v. Bankes (1934), 127 Ohio St. 517, paragraph three of the syllabus.